NOLEN v. FAMILY LOAN CO.—83 S. W. (2d) 559.

Middle Section.    March 30, 1935.

Petition for Certiorari denied by Supreme Court, June 10, 1935.

R. C. Boyce and E. T. Hollins, Jr., both of Nashville, for plaintiff in error, Nolen.

Thos. A. Shriver, Jr., and Cornelius, McKinney & Gilbert, all of Nashville, for defendant in error, Loan Co.

FAW, P. J.  James Nolen sued Family Loan Company, a corporation, before a justice of the peace of Davidson county for $70, and averred in the warrant that defendant had exacted that sum from him "under the guise of a fee for investigating the moral and financial standing of plaintiff, the security, titles, etc., and other expenses incident to the loan;" but that said sum was, in fact and in law, "usurious interest."

The justice of the peace gave judgment for the plaintiff and against the defendant for $45 and costs of suit, and the defendant appealed to the circuit court of Davidson county, where the case was transferred to the third circuit court and was tried to a jury in the latter court, but, at the close of the plaintiff's evidence, the trial judge, on motion of defendant, directed the jury to return a verdict for the defendant, which was done, and the plaintiff's suit was dismissed at his cost.

The plaintiff seasonably filed and presented a motion for a new trial, which was overruled, and thereupon the plaintiff appealed to this court, and is here contending, through assignments of error, brief and oral argument of counsel, that the trial court erred in directing a verdict for the defendant.

It appears from the testimony of the plaintiff that he borrowed $150 from the defendant on September 19, 1930, and at that time executed and delivered to defendant a promissory note for $150, a chattel mortgage on certain household furniture therein described, and an order to his employer, Beasley & Sons, for the payment, from time to time, of sums equivalent to one-tenth of his salary or wages, but which "order" provided that it was not to be served on plaintiff's employer unless default was made by plaintiff in the payment of monthly installments on the loan.

Plaintiff filed the chattel mortgage and the assignment of wages above mentioned as exhibits to his testimony, but did not file the note.  However, it appears that the entire sum demanded by the defendant, according to the terms of the contract, had been paid

by plaintiff, and the three papers mentioned were marked "paid" by defendant and surrendered to plaintiff on September 19, 1932. The chattel mortgage recites that it is executed to secure "one certain promissory note, dated Sept. 19, 1930, for $150, due in 30 installments, as follows, $5 on the 19th day of October 1930, and $5 on the 19th day of each month thereafter until the full amount of principal, with six per cent interest per annum and fee of three per cent per month on unpaid balance as provided in chapter 153 of the Acts of 1925, has been paid."

It is seen that plaintiff discharged the contract five or six months before its maturity. However, it is not claimed that this premature payment was other than purely voluntary on his part.

The plaintiff's cause of action is stated in the warrant issued by the justice of the peace as follows:

"On or about the 19 day of September, 1930, the defendant loaned the plaintiff $150, which loan was paid in full by plaintiff, on or about the 18 day of September, 1932. That defendant arbitrarily charged plaintiff and plaintiff paid to defendant in addition to interest of 6 per cent per annum, 3 per cent per month under the guise of fees, but plaintiff avers that said 3 per cent per month was unearned by defendant, except perhaps for the first month of said loan, as defendant charged and exacted said 3 per cent per month under the guise of a fee for investigating the moral and financial standing of plaintiff, the security, titles, etc., and other expenses incident to the loan, and plaintiff charges that defendant incurred no expense in such investigation and that no investigation was made and no such amount as charged was earned by defendant and that said 3 per cent per month was demanded and collected by defendant from plaintiff as compensation for the use of the money and as a subterfuge to cover and conceal the exaction of interest in excess of 6 per cent per annum, and said charge was not a reasonable charge but a mere evasion of the law against usury and said 3 per cent per month charge exacted in said transaction was in reality additional interest in addition to the charge of 6 per cent interest per annum exacted by defendant and paid by plaintiff on said loan.

"Plaintiff charges that said fees charged by defendant and paid by plaintiff amounted to over $70 and that no part of same was earned by defendant and same was usurious interest collected by defendant as aforesaid wherefore plaintiff asks for judgment against defendant in the sum of $70 and costs of this cause."

The applicable provisions of the Small Loan Act of 1925, chapter 153, are carried into the Code of 1932, as sections 6733, 6734. The burden was on plaintiff to show that the "fee of 3 per cent per month" contracted and paid was exorbitant and did not bear a reasonable relation to the expense and service of the defendant

for investigating the moral and financial standing of the applicant, investigating the security, titles, etc., and for other expense of every nature whatsoever incident to this particular loan, and for closing the loan.

It was so held in the case of Family Loan Company v. Hickerson (Tenn. Sup.), 73 S. W. (2d), 694, 697, 94 A. L. R., 664, wherein the court said:

"That the Small Loan Act, codified at sections 6721 et seq. of the Code of 1932, authorizes and empowers a small loan company qualified to do business under said Small Loan Act to charge a fee 'not above three per cent per month of the principal sum lent over the term of the loan,' and any borrower seeking affirmative relief based on any averment that a fee not above 3 per cent. per month of the principal sum lent over the term of the loan is exorbitant or does not bear a reasonable relation to the expenses and services of the lender in the transaction, and, therefore, amounts to the charging of usurious interest, would be under the duty of establishing or proving such averment by a preponderance of the evidence, and the small loan company would not, primarily, be under the duty of justifying the charging of such fee not above 3 per cent. per month unless and until the borrower had established by a preponderance of the proof a prima facie case showing affirmatively that such fee not above 3 per cent. per month does not bear a reasonable relation to the expenses and services of the lender in the particular transaction. The court is of the opinion that the burden of going forward with the proof in any specific case may shift from time to time, but no presumption in favor of a borrower seeking affirmative relief arises by a mere showing by the borrower that the small loan company charged a fee not above 3 per cent. per month of the principal sum lent over the term of the loan."

The only proof touching the expenses and services for which the statute authorizes the loan company to charge was testimony of Dale Bevan and James H. Frazier, members of the Nashville bar, with reference to a proper fee for the preparation of the note, mortgage, and assignment of wages.

On his original examination, Mr. Bevan stated that, in his opinion, a reasonable charge for the preparation of the three papers named, in a case involving $150, was $5.

On cross-examination, Mr. Bevan stated that "to draw up all three of those papers and vouch for their legality," he did not feel that he "would be justified in doing it for less than $50."

Mr. Frazier testified that he thought a reasonable charge for drawing the note, mortgage, and assignment of wages was $5.

No other proof was offered with respect to the expenses and value of the services of the defendant incident to the loan in ques-

tion, and we think it obvious that the proof was not sufficient to justify the submission of the case to the jury.

It is argued for plaintiff that it was error to direct a verdict for defendant, because "no proof was introduced that defendant was qualified and operated under sections 6721 to 6743 of the 1932 Tennessee Code or any other law giving it the right to charge more than 6 per cent. interest."

It is quite clear from the record that, throughout the trial below, the court and counsel proceeded upon the theory that the case was governed by the "Small Loan" statute. For example, in the course of the trial a question arose as to the materiality of certain testimony and there was a colloquy between the court and the attorneys for the plaintiff as follows:

"Mr. Boyce: That is the law, you can't charge in excess of three per cent, you have no right, to charge an arbitrary amount.

"The Court: This is anticipating what trouble you will have, the fact you had trouble or may have trouble, would not be determinative of the rights of each individual, the charges are made as a business as a whole, not as to this particular man's account; otherwise a man would make his contract and taking their experience into consideration they would fix a certain amount, they may arbitrarily fix it larger than it ought to be, and then he would be entitled to a recovery; but it would not be determined by each man's special case, because otherwise then a man not giving any trouble at all would be entitled to get all the service charge back.

"Mr. Hollins: Judge, listen to this Act.

" 'Every person licensed hereunder, may lend any sum of money not exceeding in amount the sum of Three Hundred Dollars, and may contract for, charge and receive thereon interest not to exceed six per cent. per annum, provided, however, that the licensee may charge and receive for investigating the moral and financial standing of the applicant, investigating the security, titles, etc., and for other expenses and losses of every nature whatsoever, and for closing the loan, a fee not above three per cent. per month of the principal sum lent over the term of the loan, both interest and fee to be computed on the unpaid balance of the principal due at the end of each month over the life of the loan.'

"The Court: That is true, that is for investigating the man, that is making the loan, that is true.

"Mr. Hollins: Investigating the security, titles, etc., and for other expenses and losses of every nature whatsoever. You have to read the plan in there.

"The Court: What other expenses or losses of every nature could be involved in making a loan to a particular man? (Argued.)"

The first suggestion in the record of the necessity for proof by

the defendant that it was qualified to do business under the "Small Loan" Act was in the sixth (and last) ground of plaintiff's motion for a new trial, which was that:

"The Court erred in not holding that the burden of introducing proof was on defendant to show that it had qualified to do business under and complied with Chapter 153, Acts 1925, and that the charges in fees made of $65 on a loan of $150 over a period of 18 months was a reasonable fee for the services performed and expenses incurred in making and closing the loan."

■ "It is well settled that the theory upon which the case was tried in the court below must be strictly adhered to on appeal. Thus if the case is tried on the theory of the existence of a certain fact it cannot be objected on appeal that there was no proof of the existence of such fact, as, if objection had been made in the court below to the absence of such proof, the lack might have been supplied." 2 R. C. L., pp. 79, 80, par. 55.

The rule just stated governs the instant case, and the trial court did not err in directing a verdict for the defendant.

It results that the assignments of error are overruled and the judgment of the circuit court is affirmed, and a judgment will be entered accordingly.

The costs of the appeal will be adjudged against the plaintiff, James Nolen.

Crownover and DeWitt, JJ., concur.