# GHORMLEY v. RAULSTON et al.—233 S. W. (2d) 57.

Eastern Section.   August 5, 1950.

Petition for Certiorari denied by Supreme Court, October 10, 1950.

William B. Ladd, of Kingston and Dannel & Fowler, of Loudon, for appellant.

· Goodwin & Babcock, of Lenoir City, for appellees.

McAMIS, J. This case presents a contest between a mortgagee of personal property, subject to an outstanding conditional sales contract, and a purchaser at private sale from the conditional seller. The Chancellor dismissed the bill of the mortgagee Ghormley and he has appealed.

We take the following clear and accurate statement of the salient facts from the brief of counsel for complainant:

"The defendant, Willie Stroup, on September 5, 1945, purchased the automobile in question from the Hartsook Motor Company paying part in cash, the balance of $742.00 evidenced by a conditional sales contract and note payable in monthly installments of $61.84, the last installment falling due September 5, 1946. Stroup drove the car about a year and then took it to complainant, Ghormley Brothers, who operate a garage and repair shop, and the Ford automobile agency, in Lenoir City, for a new engine and other repairs. Mr. Stroup gave the complainant, Ghormley Brothers, a note dated October 25, 1946, due six months from date, in the sum of $600.00 for these repairs secured by a chattel mortgage on the automobile, which mortgage was duly recorded. At the time this chattel mortgage and note were given, Mr. Stroup told Mr. Ghormley that he still owed something like $600.00 on the purchase of the car and the Ghormley mortgage was given and accepted as a secondary lien. Mr. Ghormley valued the automobile, after repairs, at $1,200.00.

"This chattel mortgage contained, among other things, the following provision: 'This mortgage shall be binding until released from the record. And it is hereby agreed that if default be made in the payment of said debt, or any part thereof, or if any attempt be made to remove or dispose of said property, he (mortgagee) is hereby authorized either by itself or agent to enter upon the premises where the said property may be and remove the same, etc. . . . .'

"Mr. Stroup kept the car for about a year, after executing the chattel mortgage, without paying anything on the note of the complainant Ghormley and without paying anything on the conditional sales note held by the Hartsook Motor Company. Mr. Stroup just coasted along on

the splendid credit rating which he had established over a period of years with the Hartsook Motor Company and also with Ghormley Brothers, the mortgagee. Mr. Stroup, being advised he had to pay up or return the car, then returned the automobile to the Hartsook Motor Company and secretly and without notice or warning to the complainant, his mortgagee, executed, after default, an agreement or waiver dated January 7, 1947, . . . in which he authorized and requested the Hartsook Motor Company to dispose of the automobile privately . . . .

"This waiver or request for private sale contains, among others, this paragraph: 'The undersigned, therefore, does hereby waive posting of any notices or advertising the time and place of sale, and all other rights he may have concerning the foreclosure of the lien on or sale of said merchandise, in order that the Company may negotiate privately the sale of said merchandise.'

"The Hartsook Motor Company on February 12, 1947, traded the automobile to the defendant Raulston at private sale, without notice to the complainant, Ghormley. Raulston traded to the Hartsook Motor Company for the automobile a 1940 Chevrolet, $200.00 in cash, and a note at the bank for $500.00."

The action is one of replevin and not one to recover funds realized by the conditional seller over and above its lien indebtedness. Indeed, as we understand, it is not insisted that the resale by Hartsook Motor Company to Raulston was for less than the value of the car or that Hartsook Motor Company realized more than the amount then due under the conditional sales contract.

Code Section 7287 provides that the conditional vendor, after default and having regained possession of the property, shall advertise the property for sale for a period of ten days by written or printed posters. It is

provided, however, that the original seller, or his assignee, and the purchaser, may at any time by agreement in writing, entered into after default, waive the public sale.

Conceding that under this provision of the statute a conditional vendee may validly waive public advertisement and sale and request a sale at private treaty after default and repossession by the conditional vendor, it is strenuously insisted that this cannot be done in a manner to prejudice the intervening rights of third parties. It is insisted that when Raulston purchased from the Hartsook Motor Company he was charged with notice of complainant's recorded mortgage by the terms of which Stroup bound himself not to dispose of the property in a manner to injure or destroy complainant's rights and that a sale without notice to him and without an opportunity to protect his vested interest in the property under the mortgage should be held void and of no effect. In short, it is said Stroup by the execution of the mortgage, pro tanto, divested himself of the right which he otherwise would have had under the statute to waive a public sale and authorize a private sale of the property.

In Tennessee a conditional sales contract is but a form of lien to secure the purchase price, partaking of the nature of a chattel mortgage. Marion Manufacturing Co. v. Buchanan, 118 Tenn. 238, 99 S. W. 984; McDonald Automobile Co. v. Bicknell, 129 Tenn. 493, 167 S. W. 108; Blackwood Tire & Vulcanizing Co. v. Auto Storage Co., 133 Tenn. 515, 182 S. W. 576; Williamson Brothers v. Daniel, 21 Tenn. App. 346, 110 S. W. (2d) 1028.

Despite these holdings, however, it was held or at least strongly intimated in the leading case of Spence Drug

Co. v. Liquid Carbonic Corp., 166 Tenn. 544, 64 S. W. (2d) 11, that only the conditional vendee can complain of the failure of the conditional vendor to advertise and sell the property in accordance with the statutory provisions. There are other cases holding to the same general effect but they involved only the right to recover of the conditional vendor the amount paid upon the property as a penalty for noncompliance with the statutory mode of advertisement and sale. To that extent, at least, the facts differed from those appearing in the case here presented.

The general rule is that a mortgagee of a conditional purchaser, in the absence of statute, is entitled to a lien on all the interest which the conditional vendee owned at the time of the execution of the mortgage and is entitled to obtain full title to the property upon payment of the full purchase price. Personal Finance Co. of Providence v. Henley-Kimball Co., 61 R. I. 402, 1 A. (2d) 121, 117 A. L. R. 1476. These rights, however, are subject to the rights of the conditional vendor of which the mortgagee must take notice. Annotation 87 A. L. R. 942, 946, 949.

Under the Tennessee statute, among the rights conferred upon the conditional vendor, is the right, by agreement with the conditional vendee, to sell the property at private sale. There is nothing in the statute which requires the seller to investigate to determine whether the property has been mortgaged before obtaining and relying upon the consent of the conditional vendee that the property be sold privately rather than at public sale. The mortgagee, on the other hand, must take notice of this right in his dealings with the conditional vendee and, we think, cannot complain in the absence of collusion or fraud. This is not·shown in the present case.

Under the registration laws, upon which complainant relies in this case, the question arises, From whom did Raulston acquire title and right of possession? If he acquired his rights from Stroup, he would be charged with constructive notice, equivalent to actual knowledge, of any recorded instrument executed by Stroup and affecting Stroup's right to sell the property. If, on the other hand, Raulston acquired title from the Hartsook Motor Company and it in turn proceeded under the conditional sales statute, in one of the two methods there provided for enforcing its lien and clearing the title, Stroup could not be considered the source of his title and the registration laws would not have application.

██ Our conclusion is that the Hartsook Motor Company did nothing more than pursue a right of which Ghormley was charged with notice when he accepted the mortgage. This right existed before Ghormley's rights intervened and we do not think the Hartsook Motor Company was under any duty before exercising its right, to investigate for subsequently acquired rights of third parties. So long as it proceeded under the statute and not by rescission or repurchase from the conditional vendee it would not, in our opinion, be compelled to take notice of subsequently recorded instruments.

We are not called upon to determine in this case what the duties of the conditional vendor would have been had the property brought an amount in excess of the amount due it. As the case was presented to the Chancellor, we think it was correctly decided and it results that all assignments are overruled and the decree affirmed with costs.

Hale and Howard, JJ., concur.